UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ROBERT J. DEL COL, ESQ. and LEFTHERIS
"TED" DOUKAS,

                Plaintiffs,

            v.

KATHLEEN RICE, acting individually and as the
duly elected District Attorney for the County of
Nassau; COUNTY OF NASSAU; GUIDO
GABRIELE, III, ESQ., acting individually
and on behalf of the Nassau County District
Attorney's Office; LINDA PERESS, acting
individually and as a purported duly appointed
Assistant District Attorney for the County
of Nassau; DATATREASURY CORPORATION;
RICHARD B. FRIEDMAN; CLAUDIO
BALLARD; SHEPHARD LANE; KEITH DELUCIA;
ASSISTANT DISTRICT ATTORNEY JOHN
and JANE DOES #1 – 20 of the COUNTY
OF NASSAU; NASSAU COUNTY DISTRICT
ATTORNEY DETECTIVE INVESTIGATORS
JOHN and JANE DOES #1 – 20, or those acting
in a similar capacity and under the law
enforcement authority of the NASSAU COUNTY
DISTRICT ATTORNEY; NASSAU COUNTY
POLICE OFFICER JOHN and JANE DOES #1 – 20;
and UNKOWN CORPORATIONS AND
INDIVIDUALS #1 – 20,

                Defendants.

----------------------------------------------------------------x

**MEMORANDUM & ORDER**
11 CV 5138 (MKB)

MARGO K. BRODIE, United States District Judge:

        Plaintiffs Robert J. Del Col, Esq. and Leftheris "Ted" Doukas filed the above-captioned

action against Defendants on October 21, 2011. Plaintiffs allege that they were arrested and

indicted as part of a "pay to prosecute" conspiracy. They filed the Complaint against five

categories of defendants; (1) Kathleen Rice, the District Attorney ("D.A.") of Nassau County;

the County of Nassau; Guido Gabriele, III, a former Assistant District Attorney ("A.D.A.") in the Nassau County D.A.'s Office, who was appointed to prosecute Doukas and Del Col after leaving the Nassau County D.A.'s Office; Linda Peress, the Bureau Chief of the Nassau County D.A.'s Office; John and Jane Doe A.D.A.s working for the Nassau County D.A.'s Office; John and Jane Doe D.A. Detective Investigators; John and Jane Doe Nassau County Police Officers; the Sheriff of Nassau County; and the Nassau County Correctional Center (collectively the "Nassau County Defendants"); (2) the DataTreasury Corporation ("DTC"), a Delaware corporation doing business in Plano, Texas; Claudio Ballard, an owner of shares in DTC and an officer in the company; Shepard Lane, the General Counsel for DTC; Keith DeLucia, the Chief Executive Officer and majority shareholder of DTC (collectively the "DTC Defendants"); (3) Richard Friedman, an attorney who represented the DTC Defendants in a patent litigation; (4) Matthew Didora, an attorney who was in possession of the Del Col's and Doukas's indictment; and (5) Mary Hauptman, Doukas's ex-wife.[1]

Plaintiffs brought claims for unlawful search and seizure, abuse of process, conspiracy to violate federally protected rights, conspiracy to obstruct justice, manufacture of false evidence, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, New York constitutional tort, negligence, false arrest and false imprisonment, pursuant to 42 U.S.C. § 1983 ("§ 1983"), 42 U.S.C. § 1985 ("§ 1985"), and New York state common law. The claims were asserted against all Defendants, except for the search and seizure claim, which was only asserted against the Nassau County Defendants, and the manufacture of

---

[1] Mary Hauptman was voluntarily dismissed from the case prior to the motion to dismiss.

false evidence claim, which was asserted against the Nassau County Defendants, the DTC Defendants and Friedman.[2]

All Defendants move to dismiss on various grounds. The DTC Defendants and Friedman also seek attorneys' fees. Plaintiffs cross moved to disqualify the Nassau County Defendants' counsel. The Court heard argument on July 26, 2012, and the Court decided several of the claims at oral argument.[3] For the reasons set forth below, Defendants' motions to dismiss the remaining claims are granted in part and denied in part. The Court grants the motions to dismiss the malicious prosecution claim as to the Nassau County Defendants and the false imprisonment and false arrest claims as to all Defendants. The Court denies the motions to dismiss the conspiracy and abuse of process claims as to all Defendants and the malicious prosecution claim as to the DTC Defendants and Friedman. The Court also denies the motions for attorneys' fees.

## I.    Background

Plaintiffs' causes of action arise out of an alleged conspiracy between the Nassau County Defendants, the DTC Defendants, Richard Friedman, Matthew Didora, and Mary Hauptman.

---

[2] In the Complaint, the conspiracy claim is asserted against the Nassau County Defendants and "the DTC Defendants." (Compl. ¶¶ 239–242.) In Plaintiffs' Opposition to Friedman's Motion to Dismiss, the Plaintiffs assert that they considered Friedman to be a DTC Defendant in the Complaint. (Pls.' Mem. in Opp'n to Friedman Mot. Dismiss 2.)

[3] At oral argument, the Court denied Plaintiffs' cross motion to disqualify counsel for the Nassau County Defendants and dismissed the Complaint against Didora, Nassau County Correctional Center, and the Sheriff of Nassau County. The Court also granted Defendants' motions to dismiss the manufacture of false evidence, the intentional infliction of emotional distress, the negligent infliction of emotional distress, the New York constitutional tort, and the negligence claims. The Court denied Defendants' motion to dismiss the search and seizure claim against Nassau County, Rice, Gabriele, and Peress, and the John and Jane Doe A.D.A.s. Plaintiff withdrew all claims under § 1985. Plaintiff also withdrew his conspiracy to obstruct justice claim under § 1983.

According to Plaintiffs, Doukas was part of a joint venture with Ballard in 1994/1995. [4]

(Compl. ¶ 87.)  Doukas provided capital, while Ballard worked on developing technology.  (*Id.*

at ¶¶ 87–97.)  The joint venture created a valuable patent, which was later assigned to DTC;

however, Doukas was unaware that Ballard had been successful in creating a valuable patent.

(*Id.*)  Doukas became aware of the patent after a conversation with Del Col, in which Del Col

mentioned he was litigating the patent on behalf of another client in *Trimarco v. DataTreasury*

*Corp.* ("the *Trimarco* litigation").  (*Id.*)  Doukas told Del Col that he also had an interest in the

patent.  (*Id.*)  On June 12, 2009, Del Col referenced Doukas's potential claim in a motion to

dismiss the *Trimarco* litigation.[5]  (*Id*. at ¶ 98.)  Days after filing the motion, the first

contributions to Rice's campaign began.  (*Id*. at ¶ 99.)  The DTC Defendants and individuals

allegedly associated with them gave $150,000 to Rice in her campaign for office. [6]  (*Id*. at ¶ 100.)

---

[4] The allegations set forth herein are taken from the Complaint, unless otherwise indicated and are assumed to be true for the purposes of this motion.

[5] After the oral argument, the DTC Defendants submitted a letter to the Court where they asserted that in the motion to dismiss the *Trimarco* litigation, Del Col only claimed that Doukas was an investor and not that he was part of a joint venture.  (*See* Docket Entry No. 130.)  The DTC Defendants attached to their submission a copy of Del Col's brief in support of his motion to dismiss in the *Trimarco* litigation.  (*Id.*)  The DTC Defendants' submission is not properly before the Court and is not considered by the Court in deciding the motion.  *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) (holding that "a district court errs when it 'considers affidavits and exhibits submitted by' defendants, or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss" (alteration and citations omitted)).

[6] Based on the Complaint, the only Defendants that donated directly to Rice's campaign are Ballard (over $5,000) and Lane ($10,000).  (Compl. ¶¶ 106–07.)  The other donors were individuals loosely associated with Defendants.  (*Id.* at ¶¶ 101–05.)  The DTC Defendants concede that donations were made but dispute the amount and the purpose of the donations.  (DTC Mot. Dismiss Mem. at 2.)  The dispute regarding the donations is a factual dispute that need not be decided by the Court on a motion to dismiss.  *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (On a 12(b)(6) motion to dismiss, a Court must "accept as true all allegations in the Complaint and draw all reasonable inferences in favor of the non-moving party." (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009))).

On November 20, 2009, Del Col sent a letter on behalf of Doukas, to Friedman, who was the attorney for DTC in the *Trimarco* litigation. (Ferrillo Decl. Ex. A.) In the letter, Del Col claimed that Doukas wanted to "discuss a pre-commencement settlement" of his claim before getting involved in the *Trimarco* litigation. (*Id.*) The letter ends with a post-script which states: "While my client wishes to keep his address confidential, it appears that several entities have been unsuccessfully attempting to serve subpoenas upon him, do you know what this is about . . . are they yours? Get back to me on this before he is compelled to testify in a way that could potentially harm your client in its action against the various banks." (*Id.*)

Subsequently, "[u]pon information and belief, the '*pay to prosecute scheme/conspiracy*' was formed sometime in late December 2009/early January 2010." (Compl. ¶ 115) (emphasis in original). On December 31, 2009, Gabriele left his employment at the Nassau County D.A.'s Office, as an A.D.A., and a few days later Rice appointed him to prosecute Del Col and Doukas. (*Id.* at ¶¶ 118–19.) Between January 1, 2009 and February 9, 2010, the DTC Defendants and the Nassau County Defendants "conducted secret and clandestine meetings . . . in order to discuss how . . . Rice could assist [DTC] in ridding itself of . . . Doukas and Del Col who had become a problem and posed a threat to" the DTC Defendants' earnings because of Doukas's patent claim. (*Id.* at ¶ 116.)

"[O]n or about February 9, 2010, . . . Gabriele, . . . appeared before the Grand Jury, presided over that body and knowingly permitted witnesses, including members of the conspiracy, to testify falsely against . . . Del Col and Doukas in furtherance of the conspiracy." (*Id.* at ¶ 122) (emphasis in original). The alleged witnesses included Ballard, Lane, Friedman, Mary Doukas, and detective investigators. (*Id.* at ¶ 123.) Ballard allegedly falsely testified that Doukas had no interest in the patent and "was nothing more than a '*nosey landlord*.'" (*Id.* at

¶¶ 125–26) (emphasis in original). Lane and Friedman also allegedly falsely testified that Doukas had no legitimate claim to the patent. (*Id.* at ¶¶ 127–30.) On February 9, 2010, the impaneled grand jury issued an indictment against Plaintiffs for grand larceny in the second degree ("extortion") for the alleged extortion of the DTC Defendants. (Bartoldus Aff. Ex. A.) At 6:00 p.m. on February 9, 2010, Plaintiffs met with the DTC Defendants and Defendant Friedman.[7] (Compl. ¶¶ 140–41; Didora Aff. Ex. 3.)

At the meeting Plaintiffs, Friedman, Ballard, and Lane discussed "settling" Doukas's claim and possible deposition testimony in the patent litigation. (Compl. ¶¶ 140–41; Didora Aff. Ex. 3.) The meeting was recorded with audio equipment provided by the D.A.'s office. (Compl. ¶ 121.) During the meeting, the DTC Defendants gave Plaintiffs $75,000 as an "initial settlement payment" by check from DTC payable to Del Col, as attorney for Doukas. (DTC Mot. Dismiss Mem. 7.) Plaintiffs agreed to execute a "settlement agreement" providing for future payments of $325,000 to Doukas. (*Id.*) Doukas agreed to sign an affidavit stating that he knew nothing about the ownership of DTC's patents. (*Id.*) As they left the meeting, Plaintiffs were arrested. (Compl. ¶¶ 140–41; Didora Aff. Ex. 3.) Defendants executed the arrest after Doukas signed the settlement agreement, where he released all claims to the patent, which was the primary goal of the DTC Defendants. (Compl. ¶ 144.) While Plaintiffs were being arrested, "Lane was heard to exhort '*that was worth the price*' and . . . Friedman exclaimed, '*I wish the Manhattan D.A. could be so cheap.*'" (*Id.* at ¶ 145) (emphasis in the original).

---

[7] Plaintiffs claim that they were "lur[ed] . . . into Nassau County under the auspices of attending a settlement conference regarding Plaintiff Doukas' claims" at the Garden City Hotel, in Nassau County. (Compl. ¶¶ 120, 141, 143.) Del Col is a resident of Suffolk County, State of New York and Doukas is a resident of the state of Florida. (*Id.* at ¶¶ 141, 143.) Rice, Gabriele, and Peress then provided Lane, Friedman, and Ballard with listening devices to record the settlement discussions. (*Id.* at ¶ 121.)

Plaintiffs were incarcerated for two nights.  (*Id.* at ¶ 157.)  After they were released from jail, Plaintiffs conducted an investigation and uncovered the "pay to prosecute" conspiracy.  (*Id.* at ¶ 164.)  Their investigation unearthed the contributions to Rice by the DTC Defendants and those associated with them.  (*Id.* at ¶ 166.)  The individuals that contributed allegedly had no connection to Nassau County.  (*Id.*)

Plaintiffs moved to dismiss the indictment on several grounds.  *See People v. Del Col et. al.*, Ind. No. 313N-10, slip op. (N.Y. Cnty. Ct. filed Oct. 26, 2010).  The County Court of the State of New York, County of Nassau ("Nassau County Court") held that Rice had no authority to appoint Gabriele as a Special Assistant District Attorney and dismissed the indictment.  *Id.* at 3 ("It is clear that the District Attorney's appointment of Mr. Gabrielle [sic] as a 'Special Assistant District Attorney' exceeded her authority under Law and improperly empowered him with a position that does not exist, thus necessitating a dismissal of the indictment.").  The Nassau County Court gave the D.A.'s Office of Nassau County leave to "to represent [the] matter to a new Grand Jury within 45 days of the date of [the order]."  *Id.* at 4.  Defendants conceded at oral argument that no new indictment has been brought against Plaintiffs.

The Appellate Division, Second Department affirmed the lower court's decision dismissing the indictment.  *People v. Del Col*, 930 N.Y.S.2d 488, 488–89 (App. Div. 2011) ("Under the circumstances of this case, the County Court properly determined that the District Attorney lacked the authority to appoint the prosecutor who presented the subject charges to the grand jury . . . [and] did not err in determining that dismissal of the indictment was warranted on the ground that the District Attorney lacked the authority to appoint the prosecutor who presented the charges to the grand jury.").  The New York Court of Appeals denied the People's application for leave to appeal.  *People v. Del Col*, 18 N.Y.3d 956 (2012).

## II.    Discussion

### a.    Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

Court must "accept as true all allegations in the complaint and draw all reasonable inferences in

favor of the non-moving party."  *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57,

63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir.

2009)).  A complaint must, however, "contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S.

at 678).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader

is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### b.    Preliminary Issues

#### i.    Absolute and Qualified Immunity

The Nassau County Defendants argue that they are entitled to absolute immunity and

therefore the Complaint should be dismissed against them.  (Nassau Cnty. Mot. Dismiss Mem.

4–6.)  As the Supreme Court and the Second Circuit have repeatedly recognized, prosecutors

performing duties related to their prosecutorial function are protected by absolute immunity.  *See

e.g.*, *Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[P]rosecutors are absolutely immune from

liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's

case." (internal quotation marks and citations omitted)); *Warney v. Monroe County*, 587 F.3d

113, 120–21 (2d Cir. 2009). The immunity extends not only to the District Attorney but to all

employees engaged with the judicial process. *Hill v. City of New York,* 45 F.3d 653, 660–61 (2d

Cir. 1995) ("This includes not only officials performing discretionary acts of a judicial nature,

but also individual employees who assist such an official and who act under that official's

direction in performing functions closely tied to the judicial process."). However, "[p]olice and

other law enforcement officers generally [only] enjoy absolute immunity from suit based on the

substance of their testimony in judicial and quasi-judicial proceedings." *Sclafani v. Spitzer*, 734

F. Supp. 2d 288, 296–97 (E.D.N.Y. 2010). Because absolute immunity bars suit against covered

claims, it is a threshold issue and courts "are encouraged to determine" whether it is available to

defendants at the start of a litigation. *Anilao v. Spota*, 774 F. Supp. 2d 457, 476 (E.D.N.Y.

2011).

   To determine whether or not immunity applies to a government actor's actions, a court

must determine which functions the official was performing. *Van de Kamp v. Goldstein*, 555

U.S. 335, 342 (2009). The functional approach has been interpreted to mean that when a

prosecutor is acting as an advocate pursuing a case, the prosecutor is absolutely immune, but

when a prosecutor or other government official acts as an investigator or administrator or

engages in any other conduct not related to the judicial phase, only qualified immunity attaches.

*Van de Kamp*, 555 U.S. at 343–44; *see also Rehberg v. Paulk*, 566 U.S. —, —,132 S.Ct. 1497,

1503 (2012) (finding that under the "'functional approach' . . . actions taken by prosecutors in

their role as advocates" are absolutely immune, while action by police officers are not absolutely

immune); *Kent v. Cardone*, 404 F. App'x 540, 543–44 (2d Cir. 2011) (summary order) ("A

prosecutor is absolutely immune with respect to non-investigatory conduct before a grand

jury.").

Absolute immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy[.]" *Shmueli v. City of New York*, 424 F.3d 231, 237–38 (2d Cir. 2005); *Sclafani*, 734 F. Supp. 2d at 296–97 ("[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused[.]" (quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004))). The fact that a prosecution is halted by a state court does not negate the prosecutor's immunity. *See, e.g.*, *Anilao*, 774 F. Supp. 2d at 467 (issuing of a writ of prohibition did not "eviscerate the existence of absolute immunity").

"However, a prosecutor may lose absolute immunity even for acts performed in his role as an advocate if the prosecutor acts in the 'clear absence of all jurisdiction' or 'without any colorable claim of authority.'" *Anilao*, 774 F. Supp. 2d at 478 (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)). "In considering whether a given prosecution was clearly beyond the scope of that jurisdiction, or whether instead there was at least a colorable claim of authority, we inquire whether the pertinent statutes may have authorized prosecution for the charged conduct." *Shmueli*, 424 F.3d at 237; *see also Bernard*, 356 F.3d at 504 ("The appropriate inquiry, thus, is not whether authorized acts are performed with a good or bad motive, but whether the acts at issue are beyond the prosecutor's authority. Accordingly, where a prosecutor is sued under § 1983 for unconstitutional abuse of his discretion to initiate prosecutions, a court will begin by considering whether relevant statutes authorize prosecution for the charged conduct.").

*a) The Nassau County Prosecutor Defendants*

As prosecutors in the State of New York, Rice, Gabriele, Peress, and the John and Jane Doe A.D.A.s ("the Nassau County Prosecutor Defendants") had authority under the law to bring actions against individuals engaged in extortion. *See, e.g. Anilao*, 774 F. Supp. 2d at 484 n.22. In fact, the state court granted Nassau County leave to present evidence to a new grand jury on extortion within 45 days of the date of its order. *See Del Col.*, Ind. No. 313N-10, slip op. at 3–4. Thus, to the extent that the Nassau County Prosecutor Defendants were acting as advocates, they would be absolutely immune from civil suit.[8]

"[I]t is well-established in the Second Circuit that claims of malicious prosecution" relate to a prosecutors' role as an advocate; and, thus, prosecutors are absolutely immune from malicious prosecution claims. *McKeon v. Daley*, 101 F. Supp. 2d 79, 87 (N.D.N.Y. 2000), *aff'd*, 8 F. App'x 138 (2d Cir. 2001); *see also Shmueli*, 424 F.3d at 238 (prosecutors are absolutely

---

[8] Plaintiffs claim absolute immunity should not attach to any of their claims. Plaintiffs allege that the Nassau County Defendants' actions were "*ultra vires* and engaged in without legal or colorable claim of authority and, given the absolute lack of legitimate jurisdiction, no level of immunity attaches[.]" (Pls.' Mem. in Opp'n to Nassau Cnty. Mot. Dismiss 6–10.) Plaintiffs also allege that the Nassau County Defendants should not enjoy any immunity because they were part of a conspiracy. (Pls.' Mem. in Opp'n to Nassau Cnty. Mot. Dismiss 6–10.) Plaintiffs misunderstand the law. Regarding Plaintiffs' first point, the primary question for the Court is whether the law authorizes prosecutors to initiate "prosecution for the charged conduct." *Anilao v. Spota*, 774 F. Supp. 2d 457, 487 (E.D.N.Y. 2011); *see also Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (court's analysis focuses on whether the statute allows for prosecution); *Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) (same). Second, allegations of conspiratorial conduct do not affect absolute immunity analysis. *Shmueli*, 424 F.3d at 237–38; *Bernard*, 356 F.3d at 504 (prosecutions conducted pursuant to an improper motive may be "reprehensible" but do not remove the prosecutor from absolute immunity); *Hill v. City of New York*, 45 F.3d 653, 661–62 (2d Cir. 1995) ("[A]bsolute prosecutorial immunity extends even to conspiracies to present false evidence at trial . . . [and] in the grand jury setting."); *Anilao*, 774 F. Supp. 2d at 478 ("Ultimately, a prosecutor will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (internal quotation marks omitted)).

immune from malicious prosecution claim because it involves their roles as advocates); *Anilao*, 774 F. Supp. 2d at 467 (same). The Nassau County Prosecutor Defendants are, therefore, absolutely immune from liability on Plaintiffs' malicious prosecution claim.[9]

While absolute immunity cloaks the Nassau County Prosecutor Defendants from malicious prosecution, at this stage of the litigation, the Court cannot determine whether the Nassau County Prosecutor Defendants are entitled to absolute immunity, qualified immunity, or no immunity with regard to Plaintiffs' other claims against them. Generally, a prosecutor's actions prior to a decision to indict are not protected by absolute immunity and are only given qualified immunity. *Flagler*, 663 F.3d at 550 ("The alleged misconduct is akin to investigatory acts, and absolute immunity does not shield investigatory acts."); *Hill*, 45 F.3d at 661 ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts. 'A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.'" (citations omitted)); *Anilao*, 774 F. Supp. 2d at 467–68 ("[T]here is no absolute immunity for any alleged unconstitutional acts violating due process (including any alleged fabrication of

_____

[9] Despite not having been officially an A.D.A. at the time, Gabriele also benefits from absolute immunity for his work as an advocate prosecuting Del Col and Doukas. Absolute immunity follows the work a person is performing and not his title. *Filarsky v. Delia*, 566 U.S. —, —, 132 S. Ct. 1657, 1665 (2012) ("[I]mmunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis."); *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) ("[T]he Supreme Court has clarified that immunity is not a function of the prosecutor's title. Rather, it attaches to prosecutorial functions that are intimately associated with initiating or presenting the State's case." (citing *Kalina v. Fletcher*, 522 U.S. 118, 125, 127 (1997))); *Hill*, 45 F.3d at 660–61 (Absolute immunity applies to those who "act under that official's direction in performing functions closely tied to the judicial process."); *Anilao*, 774 F. Supp. 2d at 476–77 ("In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." (citations omitted)). Given that Gabriele was performing the function of a prosecutor, he is entitled to share in the same immunity as the other Nassau County Prosecutor Defendants.

evidence) during the investigative stage, not undertaken in preparation for the Grand Jury presentation or in the prosecutors' role as an advocate.").

Plaintiffs allege that the Nassau County Prosecutor Defendants not only presented the matter to the grand jury but were heavily involved in the investigation prior to the decision to indict. (Compl. ¶¶ 99–121.) Plaintiffs allege that the Nassau County Defendants, including the Nassau County Prosecutor Defendants, together with the DTC Defendants, participated in a series of meetings in January 2009 and February 2009, before the commencement of the grand jury investigation. (*Id.*) While it is not entirely clear what plans were discussed at the meetings, Plaintiffs appear to allege that the Nassau County Prosecutor Defendants engaged in investigative conduct in addition to prosecutorial work. (*Id.*) In addition to participating in general planning meetings, Plaintiffs allege that the Nassau County Defendants, including the Nassau County Prosecutor Defendants and the Nassau County Investigator Defendants,[10] helped organize the meetings between the DTC Defendants and Plaintiffs and provided the audio-listening equipment. (*Id.*)

Where it is impossible to determine from the pleadings the function a prosecutor played at certain stages, judgment on immunity should be reserved for summary judgment or trial. *See, e.g.*, *Hill*, 45 F.3d at 663 ("[W]hen it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss."); *Bertuglia v. City of New York,* 839 F. Supp. 2d 703, 732 (S.D.N.Y. 2012) (delaying decision on whether a prosecutor was immune in an abuse of process claim because the role the prosecutor played "is a factual dispute that cannot be resolved on this

---

[10] The Nassau County Investigator Defendants are identified in the Complaint as the Nassau County D.A. Detective Investigators John and Jane Does # 1–20. (Compl. ¶ 81.)

motion [to dismiss]"); *Anilao*, 774 F. Supp. 2d at 485 (deferring judgment on whether the prosecutors were acting as investigators or advocates in § 1983 case); *Hickey v. City of New York*, No. 01-CV-6506, 2002 WL 1974058, at \*4 (S.D.N.Y. Aug. 26, 2002) (reserving judgment on whether prosecutors were immune from false arrest and conspiracy claims since "the presence or absence of absolute immunity turns on what the prosecutor is alleged to have done, and not on the legal theory advanced or the label attached to the cause of action").  Because the Court cannot determine based on the pleadings whether the Nassau County Prosecutor Defendants were acting under absolute immunity, qualified immunity, or in absence of immunity on the remaining claims, judgment on immunity is reserved on the § 1983 conspiracy, search and seizure, abuse of process, false arrest and false imprisonment claims.

*b)  Nassau County Non-Prosecutor Defendants*

The Nassau County Non-Prosecutor Defendants argue that they should also enjoy absolute immunity because they were acting at the direction of the Nassau County Prosecutor Defendants.  Generally, detectives, police officers, and other law enforcement personnel are only granted qualified immunity, if they are granted any immunity at all.  *See Rehberg*, 566 U.S. at —,132 S.Ct. at 1502.  (stating that police officers are among the group of government officials not traditionally afforded absolute immunity.).  The Supreme Court has created "a two-step sequence for resolving government officials' qualified immunity claims.  First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "In determining whether a right was clearly established, a court asks whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted." *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007) (alteration and citations omitted). "The inquiry into whether a right at issue was clearly established is tied to the specific facts and context of the case." *Gilles*, 511 F.3d at 244. Therefore, when the first prong is met and a court finds that a right was clearly established, qualified immunity can only be determined at summary judgment or trial, when the record is more fully developed regarding the circumstances surrounding the law enforcement officers' actions. *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) ("Qualified immunity is an affirmative defense that the defendants have the burden of raising in their answer and *establishing at trial or on a motion for summary judgment*." (citations omitted) (emphasis added)); *see also Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 211 (2d Cir. 2002) (The only "purely legal question" in the qualified immunity context is "whether the plaintiff has asserted a violation of a constitutional right at all[.]" (citations omitted)).

Plaintiffs' claims for unreasonable search and seizure, malicious prosecution, abuse of process, false arrest and false imprisonment implicate rights that are clearly established under the Constitution. *Gilles*, 511 F.3d at 244 ("The Fourth Amendment prohibits 'unreasonable searches and seizures.' . . . The right to be free from arrest without probable cause has likewise long been established."). Therefore, at this stage, the Court cannot determine whether the Nassau County Non-Prosecutor Defendants enjoy qualified immunity for Plaintiffs' claims.

### ii.    Color of Law

The DTC Defendants and Friedman allege that they were not acting under the color of law and therefore cannot be liable for any of the claims under § 1983. Section 1983 allows for claims against private individuals and entities who act under the color of state law. *Filarsky v. Delia*, 566 U.S. —, —, 132 S.Ct. 1657, 1661–62 (2012) ("Section 1983 provides a cause of

action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."). A private actor acts under color of state law when his or her actions are "fairly attributable to the state." *Filarsky*, 566 U.S. at —, 132 S.Ct. at 1661–62; *see also Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009) ("Under § 1983, state action may be found when there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." (quoting *Brentwood Acad. v. Tenn. Secondary Schl. Athletic Ass'n*, 531 U.S. 288, 295 (2001)) (internal quotation marks omitted)). As a threshold issue, the Court must determine whether the DTC Defendants and Friedman "acted under the color of" the law. 42 U.S.C. § 1983.

A private individual can be found to have acted under the color of law if the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (citations omitted). "It is not enough, however, for a plaintiff to plead state involvement in 'some activity of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the activity that caused the injury' giving rise to the action." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 258 (2d Cir. 2008) (emphasis and citations omitted).

In order to satisfy the joint activity requirement, there needs to be something more than an allegation that the private party supplied information, even false information, to the police. *See Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 446 (E.D.N.Y. 2012) ("A private party supplying information or seeking police assistance 'does not become a state actor . . . unless the police officers were improperly influenced or controlled by the private party.'" (alteration in original) (citations omitted)); *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010) (holding that one incident of providing false information was not sufficient to

make a private party an actor under the color of law); *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 173 (E.D.N.Y. 2010) ("[T]he provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983.").

A private party will be shown to have acted under color of law if the party conspires with the government to deprive a plaintiff of their constitutional rights. *Missere v. Gross*, 826 F. Supp. 2d 542, 567 (S.D.N.Y. 2011) ("The touchstone of joint action is often a plan, prearrangement, conspiracy, custom, or policy shared by the private actor and the [state actor]." (citations omitted)). The test to establish a conspiracy satisfying the action taken under the color of law requirement and to establish the substantive elements for a § 1983 conspiracy claim is the same. *Ciambriello*, 292 F.3d at 324; *see also Young v. Suffolk County*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010) ("[I]f the plaintiff has sufficiently pled the existence of joint activity by the County defendants and the private party defendants or sufficiently alleged that there was a conspiracy between the private party defendants and the County defendants under § 1983, she will have sufficiently alleged state action by the private party defendants.").

The elements of conspiracy under § 1983 are "1) 'an agreement between the state [actor] and private party,' 2) 'to act in concert to inflict an unconstitutional injury,' and 3) 'an overt act done in furtherance of the goal causing damages.'" *Sclafani*, 734 F. Supp. 2d at 297–98 (citing *Ciambriello*, 292 F.3d at 324–25). "[A] Section 1983 conspiracy claim against a private individual requires more than pleading simply, and in conclusory fashion that the defendant 'conspired' with state actors." *Stewart*, 851 F. Supp. 2d at 445 (citing *Ciambriello*, 292 F.3d at 324). However, "such 'conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence.'" *Pangurn v. Culbertson*, 200 F.3d

65, 72 (2d Cir. 1999) (citations omitted). Plaintiffs need only "allege a plausible claim that there was an agreement or joint action to inflict an unconstitutional injury and an overt act in furtherance of the goal by the defendants." *Young*, 705 F. Supp. 2d at 199. "A plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." *Young*, 705 F. Supp. 2d at 197 (alteration in original) (citations omitted).

Plaintiffs' allegations go beyond the DTC Defendants and Friedman simply calling the D.A.'s Office to report a crime. According to the Complaint, the DTC Defendants bribed the Nassau County Defendants through specific campaign contributions to Rice. (Compl. ¶¶ 84–215.) The Nassau County Defendants prosecuted Plaintiffs on behalf of the DTC Defendants and Friedman, in exchange for the bribe. (*Id.*) The ultimate goal of the prosecution was to prevent Doukas from asserting his interest in the DTC patent. (*Id.*) Between January 1, 2009 and February 9, 2010, the DTC Defendants, Friedman and the Nassau County Defendants "conducted secret and clandestine meetings" to further the goals of the conspiracy, including a meeting where the DTC Defendants were provided tape recording equipment to tape a meeting with Plaintiffs. [11] (*Id.* at ¶ 116.) Defendants initiated an investigation and secured a grand jury indictment in furtherance of the conspiracy. (*Id.* at ¶¶ 84–215.) The DTC Defendants and

---

[11] Defendants argue that Plaintiffs allegations are made upon information and belief and thus insufficiently pled; however, the Second Circuit does not prevent a plaintiff from pleading "upon information and belief." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." (citations omitted) (internal quotation marks omitted)). Here, the specific facts of what took place at the alleged meetings between the Nassau County Defendants, DTC Defendants, and Friedman are within the Defendants' possession and control.

Friedman were active participants in the investigation by arranging the recording, participating in it and providing false information to the grand jury. (*Id.* ¶¶ 99–144.) On a motion to dismiss, the Court must credit Plaintiffs' version of the facts, as pleaded in the Complaint. *Matson*, 631 F.3d at 63 (The Court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." (quoting *Am. Elec. Power Co.*, 582 F.3d at 320)). Thus, for the purposes of this motion to dismiss, Plaintiffs have succeeded in meeting their burden by pleading that the DTC Defendants and Friedman engaged in joint action with the state, and therefore, acted under color of state law.

### c. Claims

#### i. Conspiracy

Plaintiffs assert a § 1983 conspiracy claim against all Defendants. As discussed above in the color of law section, Plaintiffs have sufficiently alleged that the Nassau County Defendants, the DTC Defendants, and Friedman engaged in a § 1983 conspiracy. (*See supra* Part II(b)(ii); Compl. ¶¶ 84–215.) Defendants' motion to dismiss the conspiracy claim is denied.

#### ii. Abuse of Process

Plaintiffs assert an abuse of process claim under § 1983 and New York State law against all Defendants.[12] Abuse of process occurs when a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act[,] (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Bertuglia*, 839 F. Supp. 2d at 727 (alteration omitted) (quoting

---

[12] The federal courts look to state law to define the elements of abuse of process; therefore, the Court will use the same analysis for Plaintiffs' state law and federal abuse of process claims. *See Hickey v. City of New York*, No. 01-CV-6506, 2004 WL 2724079, at *6 (S.D.N.Y. Nov. 29, 2004) *aff'd*, 173 F. App'x 893 (2d Cir. 2006) (Courts in the Second Circuit "look[] to New York state law to define . . . elements" of abuse of process. (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994))).

*Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)). It is not sufficient to allege that

Defendants had an improper motive in initiating the legal process, Plaintiffs must allege that the

legal process was instituted to gain a collateral objective. *Savino*, 331 F.3d at 77–78 ("Although

[the complaint] does allege that . . . defendants acted with an improper motive, [Plaintiff] has not

presented any evidence that they had an ulterior purpose or objective in facilitating his

prosecution[.]"); *Mangino v. Patchogue*, 739 F. Supp. 2d 205, 232 (E.D.N.Y. 2010) ("[T]he

Second Circuit expressly distinguishes between a 'malicious motive' and an 'improper purpose';

only the latter suffices to meet the 'collateral objective' prong of the abuse of process standard."

(citations omitted)); *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*,

441 F. App'x 24 (2d Cir. 2011) ("The crux of a malicious abuse of process claim is the collateral

objective element.").

 Under a liberal reading of the Complaint, Plaintiffs have sufficiently alleged abuse of

process. *See Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 323–24 (2d Cir. 2011), *cert.*

*denied*, 132 S. Ct. 1636 (2012) ("Asking for plausible grounds does not impose a probability

requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable

expectation that discovery will reveal evidence of illegality." (alteration omitted) (citing

*Twombly*, 550 U.S. at 556)); *see, e.g*, *Mangino*, 739 F. Supp. 2d at 231–33 ("[P]laintiffs have put

forward sufficient evidence to create a genuine issue of disputed fact as to whether defendants

attempted to use this 'process justified in itself' for an end other than that which it was designed

to accomplish[.]"); *TADCO Const. Corp. v. Dormitory Auth. of N.Y.*, 700 F. Supp. 2d 253, 271–

72 (E.D.N.Y. 2010) (At the motion to dismiss "stage, [plaintiff was] considered to have plausibly

alleged abuse of process in violation [of] his constitutional rights under § 1983."); *Bd. of Ed. of*

*Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889*

*AFT AFL-CIO*, 38 N.Y.2d 397, 403–04 (1975) (plaintiff had adequately pled abuse of process under New York state law).

Plaintiffs allege that there was no justification for the indictment and arrest on extortion grounds, since Doukas had a valid interest in the DTC patent. (Compl. ¶¶ 122–130, 145.) Plaintiffs allege that the purpose of their indictment and subsequent arrest was to prevent Doukas from exerting his rights to the DTC patent. (*Id.*) Plaintiffs argue that Defendants started the legal process not only to have Plaintiffs wrongfully arrested, which is an improper motive, but also to gain control of Doukas's claim to the DTC patent without properly compensating Doukas, which is an improper collateral purpose. (*Id.* at ¶¶ 144, 180–81.) By indicting and arresting Plaintiffs for extortion, Defendants could claim that Doukas never had a legitimate claim to the patent; thus, the goal of the indictment and arrest was to invalidate Doukas's claim to the patent. (*Id.*) Drawing all reasonable inference in Plaintiffs' favor and accepting Plaintiffs' allegations as true, Plaintiffs meet the elements of abuse of process under both federal and state law and Defendants' motions to dismiss the abuse of process claims are denied.

### iii. False Arrest and False Imprisonment

Plaintiffs assert claims for false arrest and false imprisonment under New York law against all Defendants.[13] "To state a claim for false arrest [or false imprisonment] under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Savino*, 331 F.3d 63 at 75 (citations omitted).

---

[13] Plaintiffs brought these claims as two separate claims; however, under New York law the claims are synonymous. *See Hickey*, 2004 WL 2724079, at *6. Therefore, the Court will discuss the claims in conjunction with one another and use false arrest and false imprisonment cases interchangeably.

Under New York law, false arrest and false imprisonment claims are subject to a one year statute of limitations. N.Y. C.P.L.R. § 215(3); *see also Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *3 (E.D.N.Y. Feb. 7, 2012) (false arrest claim time-barred because "[t]he statute of limitations for a claim of false arrest is one year"); *Guerrier v. Quillian*, No. 10-CV-9453, 2011 WL 4916295, at *4 (S.D.N.Y. Oct. 14, 2011) ("Under New York CPLR § 215, actions for false imprisonment, malicious prosecution, and false arrest must be commenced within one year."); *Bonanno v. City of Rye*, 721 N.Y.S.2d 98, 99 (App. Div. 2001) ("[A]ction to recover damages for false arrest and false imprisonment must be commenced within one year of the accrual of the cause."). The date of accrual is when a plaintiff is released from custody. *See Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) ("Under New York law a claim for [false arrest] accrues . . . at the time when plaintiff is released from jail."); *McCray v. City of New York*, No. 03-CV-9685, 2007 WL 4352748, at *15 n.20 (S.D.N.Y. Dec. 11, 2007) ("New York false arrest and imprisonment claims accrue when the claimant is released from custody, regardless of whether that release constitutes favorable termination."); *Abdell v. City of New York*, No. 05-CV-8453, 2006 WL 2620927, at *3 (S.D.N.Y. Sept. 12, 2006) ("A claim for false arrest and imprisonment accrues on the date of release from custody."); *Salman v. Econo Lodge*, 755 N.Y.S.2d 678, 678 (App. Div. 2003) ("A cause of action for false arrest accrues when the confinement terminates.").

Plaintiffs were arrested on February 9, 2010. (Compl. ¶¶ 140–145.) Plaintiffs spent two nights in jail and were released on February 11, 2010. (*Id.* ¶ 157.) Therefore, the statute of limitations began to accrue on February 11, 2010 and expired a year later. The instant action was not filed until October 21, 2011, over eight months after the statute of limitations had expired. Thus, Plaintiffs' false arrest and false imprisonment claims are time-barred.

Plaintiffs argue that the time should be tolled until the dismissal of the indictment. (Pls.' Mem. in Opp'n to DTC Mot. Dismiss 48–56.) Plaintiffs rely on *Britt v. Legal Aid Soc'y et. al.*, 95 N.Y.2d 443 (2000), to support their contention that when civil actions relate to criminal proceedings, they do not accrue until the criminal action is terminated. (Pls.' Mem. in Opp'n to DTC Mot. Dismiss 48–56.) However, *Britt* involved a claim of attorney malpractice, which the plaintiff could not maintain until he had proven himself innocent, and, thus, the claim did not accrue until the petitioner was found innocent. *Britt*, 95 N.Y.2d at 447 ("In order to open the door for even a colorable claim of innocence, criminal defendants must free themselves of the conviction, for the conviction precludes those potential plaintiffs from asserting innocence in a civil suit."). Courts have repeatedly held that the accrual time for false arrest and imprisonment is when a plaintiff is released and not when the indictment was overturned, since favorable termination of the criminal proceeding is not an element of the claim. *See Wallace v. Kato,* 549 U.S. 384, 389 (2007) (discussing the difference between false arrest and malicious prosecution); *Zaidi v. Amerada Hess Corp.*, 723 F. Supp. 2d 506, 519 (E.D.N.Y. 2010) (False arrest claim accrued upon "release from state custody[.]"); *Bumbury v. City of New York*, 880 N.Y.S.2d 44, 47 (App. Div. 2009) ("Whether denominated a cause of action for false imprisonment or false arrest, . . . the tort accrues when the confinement terminates." (citations omitted)). Defendants' motions to dismiss the false arrest and false imprisonment claims are granted. Plaintiffs' false arrest and false imprisonment claims are dismissed as time-barred.

### iv. Malicious Prosecution

Plaintiffs bring a malicious prosecution claim against all Defendants under New York state law.[14] "Under New York law, '[t]he elements of an action for malicious prosecution are (1)

---

[14] As previously discussed, the Nassau County Prosecutor Defendants are absolutely immune from Plaintiffs' malicious prosecution claim. (*See supra* Part II(b)(i).)

the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice.'" *Savino*, 331 F.3d at 72 (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).[15]  Crediting Plaintiffs' version of the facts and drawing all reasonable inferences in their favor, the Court finds that Plaintiffs have adequately pled a claim for malicious prosecution, as to the Defendants other than the Nassau County Defendants.

### a)  Initiation of the Prosecution

Plaintiffs have successfully pled that Friedman and the DTC Defendants initiated a prosecution against them.  "To initiate a prosecution, a defendant must do more than report the crime or give testimony.  He must 'play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'"  *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (alteration and citations omitted).  "[A] defendant initiated a prosecution where he 'filed the charges' or 'prepared an alleged false confession and forwarded it to prosecutors.'"  *Manganiello*, 612 F.3d at 163 (alteration and citations omitted); *see also Anilao,* 774 F. Supp. 2d at 505 (the plaintiffs' allegations that "defendants not only met with the District Attorney's Office to report a complaint about plaintiffs, but also pressured the DA's Office to file charges, provided knowingly false information and testimony, and conspired and agreed with the County defendants to procure the indictment of plaintiffs through false testimony and the withholding of exculpatory information" was sufficient to find that defendants initiated the prosecution).

---

[15] Plaintiffs only pled the malicious prosecution claim under New York state law. However, the law for malicious prosecution under § 1983 in the Second Circuit and under New York state law are the same, except that § 1983 adds the additional element that "a plaintiff must further allege that defendant's conduct resulted 'in a constitutionally cognizable deprivation of liberty.'"  *Hardy v. City of New York*, 732 F. Supp. 2d 112, 143 (E.D.N.Y. 2010) (quoting *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir. 2003)).  Therefore, given the similarity between state and federal law, both §1983 and New York state law cases are cited in this section.

As previously discussed in the color of law section, Plaintiffs have sufficiently alleged that Friedman and the DTC Defendants were actively engaged in the initiation of Plaintiffs' prosecution. (*See supra* Part II(b)(ii); Compl. ¶¶ 84–215.) They bribed the Nassau County Defendants through specific campaign contributions to Rice. (*Id.*) The DTC Defendants, along with Friedman, directed the Nassau County Defendants to prosecute Plaintiffs pursuant to the bribe. (*Id.*) In addition, Friedman and the DTC Defendants presented false evidence to the grand jury. (*Id.*) However, there are no allegations in the Complaint from which the Court could reasonably infer that the Nassau County Non-Prosecutor Defendants initiated the prosecution against Plaintiffs.[16] (*See generally* Compl. ¶¶ 84–215.) Thus, Plaintiffs have satisfied this element as to the DTC Defendants and Friedman but have failed to allege sufficient facts as to the Nassau County Non-Prosecutor Defendants.

### b) Favorable Termination

Generally, in order to establish that a prosecution terminated in favor of a plaintiff, the plaintiff must establish that the prosecution was terminated on its merits. *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) ("[A] decision on the merits [is] an essential element of a cause of action for malicious prosecution[.]"). However, where an accused was not acquitted on the merits, a plaintiff may still establish favorable determination by establishing a "final disposition

---

[16] The only allegation against the Nassau County Non-Prosecutor Defendants that could possibly lead the Court to find that they initiated the prosecution is Plaintiffs' allegation that the Nassau County Detective Investigator Defendants presented false evidence to the grand jury. (*See* Compl. ¶ 123.) However, these Defendants are absolutely immune from all claims based solely on their grand jury testimony. *Rehberg*, 566 U.S. at —,132 S.Ct. at 1506 ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."). Therefore, without allegations of other actions, the Complaint fails to allege that the Nassau County Non-Prosecutor Defendants initiated the prosecution.

. . . such as to indicate the accused's innocence"[17] or a formal abandonment by the prosecutor of the criminal proceeding. *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002) ("Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence."); *see also Wong v. Yoo*, 649 F. Supp. 2d 34, 66 (E.D.N.Y. 2009) (using the *Fulton* standard); *Furgang & Adwar, LLP v. Fiber-Shield Indus.*, 866 N.Y.S.2d 250, 251 (App. Div. 2008) ("To show a termination in [its] favor, the plaintiff must prove that the court passed on the merits of the charge or claim against [it] under such circumstances as to show [its] innocence or nonliability, or show that the proceedings were terminated or abandoned at the instance of the defendant under circumstances which fairly imply the plaintiff's innocence." (alteration in original) (citations omitted)).

Generally, a plaintiff cannot establish a favorable termination, where that plaintiff can be prosecuted again for the same charge. *See Marino v. Jonke*, No. 11-CV-430, 2012 WL 1871623, at *7 (S.D.N.Y. Mar. 30, 2012) (no favorable termination when "the dismissal is without prejudice and the prosecution may proceed on an amended information"); *Anilao*, 774 F. Supp. 2d at 508 ("[A] termination will be deemed favorable only when 'there can be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense.'" (citations omitted)); *Smith-Hunter*, 95 N.Y.2d at 197–98 (noting that where there is

---

[17] Some courts have adopted the "not inconsistent with innocence" standard, instead of the "indicative of innocence standard." *See, e.g.*, *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) ("New York law does not require a malicious prosecution plaintiff to prove her innocence, or even that the termination of the criminal proceeding was indicative of innocence. Rather, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence."); *Anilao*, 774 F. Supp. 2d at 507–08 (the plaintiff need only plead a favorable termination that "is not inconsistent with innocence." (citing *Cantalino v. Danner*, 96 N.Y.2d 391, 396 (2001))). For the purposes of this motion the Court has adopted the indicative of innocence standard. However, the Court notes that its decision would be the same under either standard.

"no indication that the prosecutor abandoned charges against the accused[,]" there is not a final determination because "it is well settled that any 'disposition of the criminal action which does not terminate it but permits it to be renewed cannot serve as a foundation for the [malicious prosecution] action'" (alteration and citations omitted)). This rule exists to prevent the possibility of two courts considering the issue of whether probable cause existed at the same time, by preventing a civil court from considering an action until it is certain that the state can no longer pursue the criminal prosecution. *Garrett v. Port Auth. of N.Y. & N.J.*, No. 04-CV-7368, 2006 WL 2266298, at *5 (S.D.N.Y. Aug. 8, 2006) (discussing the risk of "the possibility of inconsistent judgments" and "parallel litigation of the underlying probable cause determination" if malicious prosecution claims were allowed to proceed when a new indictment could still technically be brought); *Smith-Hunter*, 95 N.Y.2d at 197 (noting that "there might be two conflicting determinations as to the same transaction" if a malicious prosecution claim is allowed to proceed prior to a final termination).

The New York courts dismissed the indictment against Plaintiffs because Defendant Rice did not have the authority to appoint Defendant Gabriele to present the matter to the grand jury, but the court gave Nassau County leave to present the matter to a new grand jury within 45 days. *See Del Col, et. al.*, Ind. No. 313N-10, slip op. at 3–4 ("Leave is granted to represent this matter to a new Grand Jury within 45 days of the date of [the order]."); *see also Del Col*, 930 N.Y.S.2d at 488–89 (upholding the lower court's decision).[18] Nassau County did not represent the matter

_____

[18] Generally, a court may only consider materials encompassed in the "four corners" of a complaint when deciding a motion to dismiss. *Friedl*, 210 F.3d at 83–84 (holding that "a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants, or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss." (citations omitted)). All documents that are "attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" are considered part of the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citations omitted). A court may also consider "a document [that] is not incorporated by reference . . . where the

to a new grand jury within the 45 days ordered by the court, and, to date, Nassau County has not represented the matter to any grand jury.

The Nassau County Defendants have argued both in their papers and at oral argument that they can still seek an indictment against Plaintiffs, and, therefore, the County Court's dismissal is not a final determination. While this may be true, the fact that they have not done so and have not proffered any reason for failing to do so, two years after the initial indictment was dismissed, raises an inferences in favor of Plaintiffs that the Nassau County Defendants have "abandoned the charges" against the Plaintiffs. *See Smith-Hunter*, 95 N.Y.2d at 197–98. Such an abandonment can be considered a favorable determination for purposes of determining a malicious prosecution claim. *See Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) ("The first [rule] is that where a criminal proceeding has been terminated in favor of the accused by judicial action of the proper court or official in any way involving the merits or propriety of the proceeding or by a dismissal or discontinuance based on some act chargeable to the complainant as his consent or his withdrawal or abandonment of his prosecution, a foundation in this respect has been laid for an action of malicious prosecution." (alteration in original) (citations omitted)); *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997) ("An abandonment brought about by the accused's assertion of a constitutional or other privilege, however, such as the right to a speedy trial," is a favorable termination.); *Stampf v. Long Island R.R. Auth.*, No. 07-CV-3349, 2011 WL 3235704, at *3 (E.D.N.Y. July 28, 2011) ("New York courts have also held that even a dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents the formal abandonment of the proceedings by the public prosecutor." (internal quotation marks, alteration

---

complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* at 153 (citations omitted). The decisions of the state courts were heavily relied upon in the Complaint, (Compl. ¶¶174–176), so much so that the Plaintiffs attached the decisions in their oppositions to the motions to dismiss (*see, e.g.,* Del Col Decl. in Opp'n DTC Def. Mot. Dismiss Ex. D); thus, the Court may properly consider them in this motion.

and citations omitted)); *Smith-Hunter*, 95 N.Y.2d at 198 ("A dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents 'the formal abandonment of the proceedings by the public prosecutor,' for instance, by the entry of a *nolle prosequi*." (citations omitted)). The Court can infer from Nassau County Defendants' actions that they have abandoned their claims against Plaintiffs. The Court therefore finds that Plaintiffs have satisfied this element.

c) *Probable Cause*

Defendants also assert that the indictment creates a presumption of probable cause, and therefore, the malicious prosecution claim must fail. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino*, 331 F.3d at 72. An "indictment by a grand jury creates a presumption of probable cause[.]" *Manganiello*, 612 F.3d at 162. However, "[t]hat presumption may be rebutted . . . by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Manganiello*, 612 F.3d at 162 (internal quotation marks omitted) (quoting *Savino*, 331 F.3d at 72). Thus, where a plaintiff alleges that the indictment was procured through false evidence, the complaint will not be dismissed at the motion to dismiss stage. *See, e.g.*, *Anilao*, 774 F. Supp. 2d at 506 ("[A]t the motion to dismiss stage, the . . . defendants cannot hide behind the decision of the DA to prosecute and the subsequent indictment of plaintiffs when it was the . . . defendants who allegedly spurred the County defendants to act and fed them with false testimony in pursuit of that endeavour."); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 273 (S.D.N.Y. 2008) ("The issue of probable cause is a question of law to be decided by the court only where there is no real dispute as to the facts or the proper inferences to be drawn from such facts. Where there is conflicting evidence, from which reasonable persons might draw

different inferences the question is for the jury." (internal quotation marks, alteration and citations omitted)). Plaintiffs allege that the only reason the indictment was brought was because the Nassau County Defendants were bribed and that the indictment was partly secured through false testimony to the grand jury.[19] (Compl. at ¶¶ 99–100, 122–30.) These allegations are sufficient to overcome the probable cause presumption at the motion to dismiss stage.

### d) Malice

Plaintiffs have also adequately pled malice on the part of the DTC Defendants and Friedman. "[M]alice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." *Manganiello*, 612 F.3d at 163; *see also TADCO*, 700 F. Supp. 2d 253, 271 (E.D.N.Y. 2010) ("Actual malice requires pleading facts that show the defendant 'commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" (citations omitted)); *Manbeck v. Micka*, 640 F. Supp. 2d 351, 377 (S.D.N.Y. 2009) ("Malice in this context does not have to be actual spite or hatred; it means only that the defendant must have commenced the proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." (internal quotation marks, alteration and citations omitted)); *Newton*, 566 F. Supp. 2d at 273 (Malice is "a wrong or

_____

[19] While *Rehberg v. Paulk* holds that grand jury testimony cannot be the sole basis for a § 1983 claim, courts have allowed malicious prosecution claims to proceed, where malicious prosecution claims are based on more than false grand jury testimony. *See, e.g.*, *Tabaei v. N.Y.C. Health & Hosp. Corp.*, No. 11-CV-2013, 2012 WL 5816882, at *7 & n.8 (S.D.N.Y. Nov. 14, 2012) (plaintiff could proceed with malicious prosecution claim where plaintiff did not rely on false testimony at grand jury in a "material respect"); *Sankar*, 2012 WL 2923236, at *2–3 (distinguishing between cases where the only allegation is that a witness falsely testified at the grand jury, which are barred under *Rehberg*, and cases where false testimony "at the grand jury was but one additional step [the defendant] took in his effort to push the case against [the] plaintiff forward[,]" which are not barred by *Rehberg*). In contrast to the Nassau County Non-Prosecutor Defendants, Plaintiffs allege that the DTC Defendants and Friedman did much more than falsely testify at the grand jury; therefore, Plaintiffs can proceed at this stage with their malicious prosecution claims against these Defendants.

improper motive[.]" (internal quotation marks and citations omitted)).  "A lack of probable cause generally creates an inference of malice."  *Manganiello*, 612 F.3d at 163 (alteration and citations omitted); *Newton*, 566 F. Supp. 2d at 273.  As discussed in the abuse of process section above, (*see supra* Part II(c)(ii)), Plaintiffs have pled that Defendants were motivated to initiate the prosecution by a desire to prevent Doukas from asserting his right to the DTC patent, which is an improper motive.

Because Plaintiffs have adequately pled all of the elements of malicious prosecution, the motions to dismiss this claim by DTC Defendants and Friedman are denied.  The motion to dismiss this claim by the Nassau County Non-Prosecuting Defendants is granted for failure to plead that they initiated the prosecution.  As discussed in the absolute immunity section above, (*see supra* Part II(b)(i)), the motion to dismiss this claim as to the Nassau County Prosecutor Defendants is granted because they are absolutely immune from civil suit.[20]

### d.  Attorneys' Fees

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party [in a § 1983 action] a reasonable attorney's fee as part of the costs[.]"  The DTC Defendants and Friedman moved for attorneys' fees pursuant to § 1988.  (DTC Def. Mot. Dismiss Mem. 34–36; Friedman Mot. Dismiss Mem. 24.)  Given that some of Plaintiffs' claims remain, the Court finds the motion for attorneys' fees is premature.  *See, e.g., Soc'y for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1253, 1254 (2d Cir. 1984) (*per curiam*) (finding attorneys' fees

---

[20] Since Defendants cannot sustain a claim against any of the Nassau County individual Defendants, Plaintiffs also cannot sustain a claim for malicious prosecution against Nassau County predicated on *Monell* liability.  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Mendoza v. County of Nassau*, No. 11-CV-02487, 2012 WL 4490539, at *7 (E.D.N.Y. Sept. 27, 2012) ("When there is no underlying constitutional violation, there can be no municipal liability under *Monell*.").

premature in a case where "plaintiffs [would] be entitled to some relief, [but] it [was] impossible to be certain how much – if any – [would] eventually be granted"); *Davis v. City of New York*, No. 00-CV-4309, 2000 WL 1877045, at *2 n.7 (S.D.N.Y. Dec. 27, 2000) (finding "[a]ny award of attorneys' fees [to be] premature" where the court granted in part and denied in part a motion to dismiss); *see also Tancredi v. Metro. Life Ins. Co*., 378 F.3d 220, 230 (2d Cir. 2004) (district court abused discretion in awarding attorney's fees where plaintiffs "did not ultimately prevail" and their claim "was very weak, but it was not completely without foundation" (citations omitted)).  Therefore, Defendants' motions for attorneys' fees are denied without prejudice.

## III. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are denied in part and granted in part.  The Court grants the motions to dismiss the malicious prosecution claim as to the Nassau County Defendants and the false imprisonment and false arrest claims as to all Defendants.  The Court denies the motions to dismiss the conspiracy and abuse of process claims as to all Defendants and the malicious prosecution claim as to the DTC Defendants and Friedman.  The Court also denies the motions for attorneys' fees.

SO ORDERED.

_____
s/MKB
MARGO K. BRODIE
United States District Judge

Dated: December 18, 2012
       Brooklyn, NY